UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| SHAUN D. KING, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 4:13CV0199 ACL |
| ) | |
| IAN WALLACE, ) | |
| ) | |
| Respondent. ) | |

## **MEMORANDUM AND ORDER**

This matter is before the Court on the Petition of Shaun D. King for a Writ of Habeas Corpus under 28 U.S.C. § 2254.

### **I. Procedural History**

King is currently incarcerated at Southeast Correctional Center in Charleston, Missouri, pursuant to the Sentence and Judgment of the Circuit Court of the City of St. Louis, Missouri. (Respt's Ex. I/Doc. 23 at 68-70.)

On February 11, 2009, a jury found King guilty of statutory sodomy in the first degree. (Respt's Ex. D/Doc. 13-4 at 293.) The court sentenced King as a prior and persistent offender to twenty-five years imprisonment. *Id.* at 302; Respt's Ex. I/Doc. 23 at 69.

King raised a single point on direct appeal of his conviction. (Respt's Ex. A/Doc. 13-1.) King argued that the trial court improperly sentenced him, in that it took into consideration matters improper for sentencing. *Id.* at 2. The Missouri Court of Appeals affirmed the judgment of the trial court. (Respt's Ex. C/Doc. 13-3.)

King filed a *pro se* motion for post-conviction relief under Rule 29.15. (Respt's Ex. J/Doc. 23-1 at 3-18.) After appointment of counsel, King filed an amended post-conviction relief motion under Rule 29.15 and request for an evidentiary hearing, in which he raised two claims.

*Id.* at 24-32. First, King argued that he received ineffective assistance of counsel when trial counsel failed to conduct an adequate pretrial investigation and to call witnesses who could have supported his defense. *Id.* at 25. Second, King argued that he was improperly sentenced as a Level Four offender. *Id.* at 26. On May 12, 2011, the motion court denied King's amended motion and request for an evidentiary hearing. *Id.* at 35-38.

King raised a single point on appeal from the denial of post-conviction relief. (Respt's Ex. E/Doc. 13-5 at 8.) King argued that the motion court clearly erred in denying his claim that the sentence imposed by the trial court violated his rights to due process and freedom from cruel and unusual punishment. *Id.* The Missouri Court of Appeals affirmed the decision of the motion court. (Respt's Ex. H/Doc. 13-8.)

King filed a Petition in the instant habeas action on January 30, 2013, raising the following grounds for relief: (1) the trial court erred in sentencing King by considering improper factors; (2) he received ineffective assistance of counsel when trial counsel failed to properly investigate King's theory of defense; (3) the trial court erred in sentencing King as a Level Four offender; and (4) he is actually innocent because the victim allegedly recanted her trial testimony. (Doc. 1.)

On January 21, 2014, Respondent filed a Response to Order to Show Cause, in which he argues that Grounds Two and Four are procedurally defaulted, and all of King's claims fail on their merits. (Doc. 13.)

## II. Facts

The Court's summary of the facts below is taken directly from the decision of the Missouri Court of Appeals affirming the denial of post-conviction relief. (Respt's Ex. H/Doc. 13-8 at 2-4.)

On or about June 29, 2007, P.J. (Victim), then thirteen years of age, went to the home of her friend Kelsey to help Kelsey clean her room. King, then twenty-nine years of age and a friend of Kelsey's mother, was at the house. When Victim went downstairs to retrieve a broom, King

blocked her on the stairs and said, "You look good. I want to wait, but then again I don't."

Victim ran up the stairs to Kelsey's room, and the girls locked the door. As Victim was preparing to tell Kelsey what had transpired, they heard a knock on the door. Shortly thereafter, King opened the door with a key. King asked Kelsey to go downstairs and get him a glass of ice water, leaving King and Victim alone in the bedroom. King then placed his mouth and tongue on Victim's vagina.

When Kelsey returned with the water for King, she saw King with his head between Victim's legs. King stood up and left the room, warning the girls, "I don't care who you tell, I'm SK, I kill everybody around the corner." As Victim lived with her mother around the corner from Kelsey's house, she understood King's comment to be a threat to kill Victim and her family.

At trial, the court found that King was a prior and persistent offender because he had previously pleaded guilty to the following felonies: possession of a controlled substance on September 1, 2004; felony stealing and two counts of forgery on January 11, 1999; and possession of a controlled substance on January 11, 1999. At the sentencing hearing, after the court announced it had read King's sentencing assessment report ("SAR"), defense counsel stated:

> First, on the sentencing assessment report, they label him as a level four offender. I believe that is—I believe that's incorrect. I believe him to be a three level offender. The way that that would change matters basically is in their assessment of the mitigating, his presumptive and aggravating as a level four offender, they list it as 20, 25, and 30.
> As a level three offender it would be 10, 15, and 20. We believe 10 being a mitigating, 15 being presumptive, and 20 being the aggravating…

The prosecutor announced that the State was recommending King serve twenty-five years in the Department of Corrections. In support of this recommendation, the prosecutor explained that: King was "29 years old and his fourth felony offense"; "has not followed the rules of incarceration"; kept "the police at bay" at the time of his arrest by leading them to believe he was holding people hostage; and did not accept responsibility but rather told the SAR writer that

"people were angry" because he "checked out another woman."

Defense counsel responded: "My understanding [is that the] State's pretrial recommendation was 15 years and I still stand by the fact that I believe [King] to be a level three and I think that label of level four puts the sentencing range in excess of what, you know, based on [King]'s background what is the proper sentence in this case." The prosecutor stated that "this victim was horribly terrified to come in and testify against this man and sometimes the State is willing to cut a deal to prevent that." He argued that the state should not be held to its pre-trial recommendation.

The trial court acknowledged the dispute as to King's prior criminal history level, stating:

> I understand that, I mean, it's an assessment with a lot of factors put into it. The State is advocating what it is, defense is advocating what it is. The Court heard the case. The Court is conversant with the defendant's record. I have to say on this conclusion I have never seen the ranges in a non homicide case in this range, but, as defense attorney alleges that he's not level four, he's level three, I'm not going to go off on a tangent on that.
> This is a very serious charge. Absent a homicide, it's hard to think of a more serious charge. But long wind bagging here is not going to make it better or worse. I have a legal obligation to be fair to both sides and the victim and sentence appropriately.

The court sentenced King to twenty-five years' imprisonment.

### III. Standard of Review

A federal court's power to grant a writ of habeas corpus is governed by 28 U.S.C. § 2254(d), which provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The Supreme Court construed § 2254(d) in *Williams v. Taylor*, 529 U.S. 362 (2000). With respect to the "contrary to" language, a majority of the Court held that a state court decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or if the state court "decides a case differently than [the] Court has on a set of materially indistinguishable facts." *Id.* at 405. Under the "unreasonable application" prong of § 2254(d)(1), a writ may issue if "the state court identifies the correct governing legal rule from [the Supreme Court's] cases but unreasonably applies [the principle] to the facts of the particular state prisoner's case." *Id.* Thus, "a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Id.* at 410. Although the Court failed to specifically define "objectively unreasonable," it observed that "an unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 410.

### IV. Procedural Default

Respondent argues that Grounds Two and Four are procedurally defaulted, because King did not raise Ground Two in his post-conviction appeal, and he did not raise Ground Four at all in the state proceedings.

To avoid defaulting on a claim, a petitioner seeking federal habeas review must have fairly presented the substance of the claim to the state courts, thereby affording the state courts a fair opportunity to apply controlling legal principles to the facts bearing on the claim. *Wemark v. Iowa*, 322 F.3d 1018, 1020–21 (8th Cir. 2003) (internal quotation marks and citations omitted)

(quoting *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) and *Anderson v. Groose*, 106 F.3d 242, 245 (8th Cir. 1997)). Specifically, a state prisoner must fairly present each of his claims in each appropriate state court before seeking federal habeas review of the claim. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). A claim has been fairly presented when a petitioner has properly raised the same factual grounds and legal theories in the state courts that he is attempting to raise in his federal petition. *Wemark*, 322 F.3d at 1021 (internal quotation marks omitted) (quoting *Joubert v. Hopkins*, 75 F.3d 1232, 1240 (8th Cir. 1996)). Claims that are not fairly presented to the state courts are procedurally defaulted. *See id.* at 1022.

King raised Ground Two in his post-conviction motion, but failed to raise this claim in his appeal from the denial of post-conviction relief. When appellate review of a post-conviction motion is available, failure to include a claim made to the motion court operates as a procedural bar to consideration of such a claim by the federal courts. *Flieger v. Delo,* 16 F.3d 878, 885 (8th Cir. 1994); *Boyd v. Groose,* 4 F.3d 669, 671 (8th Cir. 1993). As a result, Ground Two is procedurally defaulted.

In Ground Four, King raises a free-standing actual innocence claim. King claims that he is actually innocent because the victim recanted her trial testimony in an Affidavit that is attached to his Petition. Respondent contends that King procedurally defaulted this claim by failing to raise it in the post-conviction proceedings. King argues that he did raise this claim in his *pro se* post-conviction motion, and that his appointed counsel failed to include the claim in his amended motion. The record reveals that King did raise this claim in his *pro se* motion, and that he attached the Affidavit of the alleged victim to his *pro se* motion.

Under Missouri case law, however, the amended post-conviction motion supersedes the *pro se* post-conviction motion, and any claims in the *pro se* motion for post-conviction relief were

no longer before the motion court, except to the extent they were included in the amended motion. *See Tinsley v. State,* 258 S.W.3d 920, 927 (Mo. Ct. App. 2008) ("the only claim which the motion court could have considered and determined was that raised in the amended ... motion for postconviction relief [because t]he filing of an amended motion superseded [the] pro se motion and rendered it a nullity" (citations omitted)); *Day v. State,* 143 S.W.3d 690, 693–94 (Mo. Ct. App. 2004) ("The amended motion supersedes [the] pro se motion and renders it a nullity" (citations omitted)). Because King's actual innocence claim was not raised in his amended post-conviction relief motion, it is procedurally defaulted.

Claims that have not been fairly presented to the state courts are procedurally defaulted and may not give rise to federal habeas relief unless the petitioner establishes "cause for not presenting the claim on post-conviction appeal and prejudice from the failure, or a fundamental miscarriage of justice-meaning that he is actually innocent." *Storey v. Roper,* 603 F.3d 507, 523-24 (8th Cir. 2010), citing *Schlup v. Delo,* 513 U.S. 298, 324 (1995).

In *Schlup,* the Supreme Court recognized that a habeas petitioner could present a claim of actual innocence as a "gateway" to resurrecting procedurally defaulted claims of constitutional error which occurred in the underlying trial, but "such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup,* 513 U.S. at 324. Petitioners asserting innocence as a gateway to defaulted claims must establish that in light of new evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327.

The Supreme Court explained in *House v. Bell,* 547 U.S. 518 (2006), that the *Schlup* standard "is demanding and permits review only in the 'extraordinary' case. At the same time, though, the *Schlup* standard does not require absolute certainty about the petitioner's guilt or

no longer before the motion court, except to the extent they were included in the amended motion. *See Tinsley v. State,* 258 S.W.3d 920, 927 (Mo. Ct. App. 2008) ("the only claim which the motion court could have considered and determined was that raised in the amended ... motion for postconviction relief [because t]he filing of an amended motion superseded [the] pro se motion and rendered it a nullity" (citations omitted)); *Day v. State,* 143 S.W.3d 690, 693–94 (Mo. Ct. App. 2004) ("The amended motion supersedes [the] pro se motion and renders it a nullity" (citations omitted)). Because King's actual innocence claim was not raised in his amended post-conviction relief motion, it is procedurally defaulted.

Claims that have not been fairly presented to the state courts are procedurally defaulted and may not give rise to federal habeas relief unless the petitioner establishes "cause for not presenting the claim on post-conviction appeal and prejudice from the failure, or a fundamental miscarriage of justice-meaning that he is actually innocent." *Storey v. Roper,* 603 F.3d 507, 523-24 (8th Cir. 2010), citing *Schlup v. Delo,* 513 U.S. 298, 324 (1995).

In *Schlup,* the Supreme Court recognized that a habeas petitioner could present a claim of actual innocence as a "gateway" to resurrecting procedurally defaulted claims of constitutional error which occurred in the underlying trial, but "such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup,* 513 U.S. at 324. Petitioners asserting innocence as a gateway to defaulted claims must establish that in light of new evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327.

The Supreme Court explained in *House v. Bell,* 547 U.S. 518 (2006), that the *Schlup* standard "is demanding and permits review only in the 'extraordinary' case. At the same time, though, the *Schlup* standard does not require absolute certainty about the petitioner's guilt or

innocence." *House,* 547 U.S. at 538 (citations omitted). And more recently in *McQuiggin v. Perkins,* 133 S.Ct. 1924 (2013), the Supreme Court reaffirmed that "a credible showing of actual innocence may allow a prisoner to pursue his constitutional claims (here, ineffective assistance of counsel) on the merits notwithstanding the existence of a procedural bar to relief." *McQuiggin,* 133 S.Ct. at 1931. The Court further stated that it had "not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence." *Id.*

Here, the undersigned concludes that King has not made a showing of actual innocence, either as a freestanding claim or as a gateway to excuse his procedural default of grounds Two and Four. King claims that the Affidavit attached to his Petition, allegedly from Victim, establishes his innocence. In the Affidavit, Victim states that her friend had a dispute with King and asked Victim to help her "get back at [King] by making the false accusations." (Respt's Ex. J at 17.) Victim states that she made the accusations because she was young at the time, and was "afraid of the consequences that I would suffer from my mother about a rumor that [I] had been sexually involved with [King]." *Id.* She states that she recants "any and all false statements and accusations that I made against Mr. Shaun King." *Id.*

The Court views the Affidavit with considerable suspicion because "[t]he stability and finality of verdicts would be greatly disturbed if courts were too ready to entertain testimony from witnesses who have changed their minds, or who claim to have lied at the trial." *See United States v. Rouse,* 410 F.3d 1005, 1009 (8th Cir. 2005) (*quoting United States v. Grey Bear,* 116 F.3d 349, 350 (8th Cir. 1997)). Skepticism about the truthfulness of such testimony is particularly warranted in child sexual abuse cases. *United States v. Provost*, 969 F.2d 617, 621 (8th Cir. 1992) (noting the "recurring phenomenon" of recantations in cases of child sexual abuse).

The Affidavit upon which King relies is not reliable evidence of his innocence. At trial, not only did Victim testify, but Victim's friend and eyewitness, Kelsey, testified at trial and corroborated Victim's testimony. In addition, Detective Jacqueline Brooks testified regarding statements that Victim and Kelsey made to her when she interviewed them less than two weeks after the crime. The statements provided to Detective Brooks regarding the crime are consistent with the testimony of these witnesses at trial. The Affidavit provided by King is not "new reliable evidence" that would support a finding that his case is "extraordinary," thereby permitting review under *Schlup*. Thus, King's grounds for relief cannot be resurrected from procedural default, because there is no new evidence or a credible claim of actual innocence.

### V. King's Claims

As previously noted, King raises four grounds for relief. The undersigned will discuss King's claims in turn.

**1.     Ground One**

In Ground One, King argues that the trial court considered improper matters in sentencing him, thereby violating his rights to Due Process and a fair trial. Specifically, King claimed it was improper for the court to consider the State's assertion that the victim was "horribly terrified" to testify at the trial.

King raised this claim in his direct appeal. He argued that the court, in sentencing him, essentially punished him for exercising his right to take his case to trial. The Missouri Court of Appeals summarily denied King's claim. (Respt's Ex. C/Doc. 13-3.) The appellate court reviewed the sentencing transcript in detail and concluded:

> It is clear from the record that the trial court considered a number of appropriate factors in determining the defendant's sentence, namely the seriousness of the nature of the crime against a child, the evidence adduced at trial, including threats

> to the victim, and the defendant's extensive criminal history. Given the record
> and the context in which the trial court made its comment, we do not read the
> single sentence identified by the defendant as evidence that the trial court
> improperly punished the defendant for exercising his right to a jury trial.

(Respt's Ex. K/Doc. 26-1.)

The Sixth Amendment guarantees the right to a trial by jury, and a court may not penalize a person for exercising a right guaranteed under the Constitution. *See Bordenkircher v. Hayes,* 434 U.S. 357, 363 (1978) ("To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort."). However, plea bargains, which often require a defendant to choose between going to trial and pleading guilty in order to receive a reduced sentence, are an important and constitutional part of the criminal justice system. *See Corbitt v. New Jersey,* 439 U.S. 212, 218–19 (1978) ("[T]here is no per se rule against encouraging guilty pleas.").

"A sentence is unconstitutionally vindictive if it imposes greater punishment because the defendant exercised a constitutional right, such as the right to jury trial or the right to appeal." *Waring v. Delo,* 7 F.3d 753, 758 (8th Cir. 1993). A habeas petitioner bears the burden of proving that actual judicial vindictiveness motivated the sentence he received after trial. *See Wasman v. United States,* 468 U.S. 559, 567–68 (1984). During a trial, "the judge may gather a fuller appreciation for the nature and extent of the crimes charged" and gain "insights into [the defendant's] moral character and suitability for rehabilitation." *Alabama v. Smith,* 490 U.S. 794, 801 (1989). In addition, "after trial, the factors that may have indicated leniency as consideration for the guilty plea are no longer present." *Id.*

The decision of the State court was not contrary to or an unreasonable application of clearly established law. King has failed to demonstrate that actual judicial vindictiveness motivated his sentence. Rather, the sentencing judge stated that he had "a legal obligation to be

fair to both sides and the victim and sentence appropriately." (Respt's Ex. D/Doc. 13-4 at 302.) The sentencing hearing transcript reveals that the court considered factors such as the serious nature of the crime, King's criminal history, and information contained in the SAR when determining King's sentence. There is no evidence that the court considered any improper factors. Thus, Ground One will be denied.

**2. Ground Two**

In Ground Two, King argues that he received ineffective assistance of counsel due to trial counsel's failure to properly investigate King's theory of defense, including reviewing possible witnesses and calling these witnesses at trial. In making this claim, King failed to identify specific witnesses as well as what said witnesses' testimony would have been. The Court has already found that King procedurally defaulted this claim by abandoning it on appeal from the denial of post-conviction relief. This claim fails on its merits as well.

The motion court held as follows:

> In order to be entitled to relief on the ground that counsel failed to call witnesses [King] must identify who the witnesses were and prove that counsel knew or should have known of their existence, establish that the witnesses could have been located through reasonable investigation, the witnesses would have testified if called and their testimony would have provided a viable defense. [Citations omitted].
> The Court finds this claim is without merit because it amounts to mere speculation. [King] has not named the witness or witnesses who could have been called and has not alleged the facts to which they would have testified and how such facts would have established a defense. The Court further notes that the victim, PJ, knew [King] and identified him as the perpetrator, and that another witness for the State, Kelsey Miller, who observed the conduct, corroborated the victim's testimony as to what occurred.

(Respt's Ex. G/Doc. 13-7 at 36-37.)

In order to state a claim of ineffective assistance of trial counsel, a petitioner must meet the *Strickland* standard: King must demonstrate that his counsel's performance was deficient and that he was prejudiced by that performance. *Strickland v. Washington*, 466 U.S. 668, 687

(1984). Deficient representation means counsel's conduct fell below the conduct of a reasonably competent attorney. *Strickland*, 466 U.S. at 687. To establish prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. Federal habeas review of a *Strickland* claim is highly deferential, because "[t]he question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether the determination was unreasonable - a substantially higher threshold." *Knowles v. Mirzayance*, 129 S.Ct. 1411, 1420 (2009) (internal quotations and citations omitted).

The determination of the motion court does not contravene or unreasonably apply clearly established federal law. King has not specified the witnesses that his counsel failed to call, or what their testimony would be. He has not, therefore, demonstrated that defense counsel's actions were unreasonable, nor has he shown that the result of his trial would have been different had counsel called the alleged witnesses. Thus, Ground Two will be denied.

**3.      Ground Three**

In Ground Three, King argues that the trial court erred in sentencing him as a Level Four offender based on the SAR. King contends that the sentence violated his rights to Due Process and freedom from Cruel and Unusual Punishment.

King raised this claim in his post-conviction motion, and in his appeal from the denial of post-conviction relief. The Missouri Court of Appeals noted that King's sentence of twenty-five years' imprisonment was within the statutory range of punishment for the crime he committed. (Respt's Ex. H/Doc. 13-8 at 6.) The court stated that the authorized term of imprisonment for first-degree statutory sodomy pursuant to Section 566.062 is life imprisonment or a term of imprisonment not less than five years. *Id.* The court found that King's sentence was not based upon misinformation about King's criminal history. *Id.* The court held:

> [King] did not challenge the trial court's finding that he was a prior and persistent offender. Nor does he now allege that the information before the sentencing court relating to his prior criminal convictions was incorrect. Instead, [King] challenges his classification as a Level IV offender—a classification provided by the Missouri Sentencing Advisor Commission to facilitate the trial courts' exercise of informed discretion in sentencing decisions. Our review of the record reveals that the trial court based [King]'s sentence on the serious nature of the crime and his criminal record, and not on his designation as a Level IV offender. Point denied.

*Id.* at 6-7.

The Cruel and Unusual Punishments Clause prohibits the imposition of inherently barbaric punishments under all circumstances, but also punishments that are disproportionate to the crime. *Id.* "The concept of proportionality is central to the Eighth Amendment. Embodied in the Constitution's ban on cruel and unusual punishments is the 'precept of justice that punishment for crime should be graduated and proportioned to [the] offense.'" *Graham v. Florida,* 130 S.Ct. 2011, 2021 (2010) (quoting *Weems v. United States,* 217 U.S. 349, 367 (1910)). "To determine whether a sentence is grossly disproportionate, [the Court should] examine the gravity of the offense compared to the harshness of the penalty." *United States v. Lee,* 625 F.3d 1030, 1037 (8th Cir. 2010) (internal quotations omitted). "A sentence within the statutory limits is generally not subject to Eighth Amendment review." *United States v. Atterberry,* 447 F.3d 562, 565 (8th Cir. 2006).

In this case, King was sentenced to a term of imprisonment within the authorized statutory range. In fact, King's sentence was less than the maximum sentence permitted under the statute. King was convicted of first degree statutory sodomy of a thirteen-year-old child, which is a serious crime. Thus, King's sentence is not disproportionate to the crime committed, and the state court's decision is not contrary to, nor does it involve an unreasonable application of clearly established federal law. Ground Three will be denied.

**4. Ground Four**

In Ground Four, King claims that he is actually innocent due to the alleged recantation of Victim. As previously discussed, King's claim is procedurally defaulted. The Court found that the Affidavit upon which King relies is not reliable evidence of his innocence. Further, "claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Burton v. Dormire*, 295 F.3d 839, 848 (8th Cir. 2002) (quoting *Meadows v. Delo*, 99 F.3d 280, 283 (8th Cir. 1996) and *Herrera v. Collins*, 506 U.S. 390, 400 (1993)). Accordingly, Ground Four will be denied.

## VI.    Certificate of Appealability

To grant a certificate of appealability, a federal habeas court must find a substantial showing of the denial of a federal constitutional right. *See* 28 U.S.C. § 2253(c)(2); *Hunter v. Bowersox*, 172 F.3d 1016, 1020 (8th Cir. 1999). A substantial showing is established if the issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997). In this case, King has failed to make a substantial showing of the denial of a constitutional right. The undersigned is not persuaded that the issues raised in his Petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings.

Accordingly, no Certificate of Appealability shall be issued.

## ORDER

**IT IS HEREBY ORDERED, ADJUDGED and DECREED** that the instant Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 be **denied** and be **dismissed with prejudice** by separate judgment entered this date.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that Petitioner be denied a Certificate of Appealability if Petitioner seeks to appeal this Judgment of Dismissal.

s/Abbie Crites-Leoni<br>
ABBIE CRITES-LEONI<br>
UNITED STATES MAGISTRATE JUDGE

Dated this 3rd day of March, 2016.